IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ISAIAH RODRIGUEZ,**

       **Plaintiff,**

vs.                                                                                               No. CIV 00-0519 LCS

**AMERICA ONLINE, INC.,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint (Doc. 11), filed June 26, 2000. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), and having considered the pleadings, briefs, arguments of counsel, relevant law, and being otherwise fully advised, finds that this Motion is well-taken in part and should be **DENIED**.

**I.    Background.**

Plaintiff, an Hispanic male, alleges that began working as a Technical Support Representative in Defendant's Albuquerque Call Center in August 1997. (Compl. ¶¶ 13-15.) In 1997 and 1998, Plaintiff received raises, awards, and commendations for his job performance. (Compl. ¶¶ 14-19.) On November 12, 1998, Plaintiff attended a meeting with Director of Human Resources Dave Robertson and Billing Service Delivery Manager Pat Devlin. (Compl. ¶ 22.) During the meeting, Robertson referred to Plaintiff as the "Cesar Chavez of the call center." (*Id.*) Plaintiff was also told to watch what he says or he might not be employed, and that when Plaintiff gets upset he tends to

"rally the migrant farmworkers." (Compl. ¶¶ 23-24.)

On November 13, 1998, Plaintiff sent a memo to Robertson complaining that the Cesar Chavez comment was racist. (Compl. ¶ 25.) Plaintiff received no response to the memo. (Compl. ¶ 26.) On December 18, 1998, Training Coach Brian Wallace addressed Plaintiff by saying "Hey, Cesar." (Compl. ¶ 28.) When Plaintiff asked why Wallace addressed him that way, Wallace told Plaintiff that he heard General Manager Dave Palmer refer to Plaintiff as "Cesar." (Compl. ¶¶ 29-30.) Plaintiff told Wallace not to use racist remarks towards him. (Compl. ¶ 32.) Wallace responded that Plaintiff was an "uppity Spic" and that because of Plaintiff's "big Spic mouth" Plaintiff would soon be on unemployment like the "rest of your people." (*Id*.) On December 18, 1998, Wallace wrote a contact memo that stated in part the "I informed him [Plaintiff] that it was a joke and not a reference to him being a spic or somthing [sic] he should take personally." (Compl. ¶ 34.)

After Plaintiff complained about Robertson's remark, he began to receive frequent write-ups, his stock options were cut, he was constantly monitored by his supervisor, received negative performance evaluations, and was called into his supervisor's office for a minor mistake. (Compl. ¶ 36.)

Plaintiff filed two charges of race discrimination with the EEOC and informed his supervisor, Delonna Youngman. (Compl. ¶¶ 36-40.) After he filed the EEOC charges, Plaintiff alleges that Youngman constantly harassed him, removed him from taking escalated calls, closely monitored him and gave him frequent write ups. (Compl. ¶¶ 40-48.) Plaintiff also received lower customer satisfaction scores and negative evaluations, his stock options were cut, and he failed to receive his usual bonus. (Compl. ¶¶ 49-52.) Plaintiff alleges that he was constructively discharged on December 3, 1998. (Compl. ¶ 53.)

On April 12, 2000, Plaintiff filed his Complaint in this Court, alleging retaliation and constructive discharge under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e (Count I), and supplemental state law claims for breach of implied employment contract (Count II), and intentional infliction of emotional distress (Count III).

On June 23, 2000, Defendant filed its Motion to Dismiss, arguing that the employee handbook negates the claim for breach of implied employment contract and Plaintiff fails to allege sufficiently outrageous and extreme conduct and sufficiently severe injury to state a claim for intentional infliction of emotional distress.

## II.     Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6).

A case should not be dismissed under FED. R. CIV. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F. 3d 1226, 1236 (10th Cir.1999).  In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *See Ordinance 59 Ass'n v. United States Dep't of Interior Secretary*, 163 F. 3d 1150, 1152 (10th Cir. 1998).

## III.    Analysis

### a.     Whether Plaintiff's Claim for Breach of Employment Contract as Contained in Count II Should Be Dismissed for Failure to State a Claim.

Defendant argues that Plaintiff's claim for breach of employment contract should be dismissed

because Plaintiff was an at-will employee. In support of this claim, Plaintiff relies on Defendant's equal employment opportunity policy contained in its on-line employment handbook. Defendant has attached a printed copy of the policy in support of its motion. Generally, consideration of a document outside of the pleadings converts a Rule 12(b)(6) motion to a motion for summary judgment. *See* FED. R. CIV. P. 12(b). However, Defendant argues that the Court may consider the handbook without converting the motion because Plaintiff referred to the handbook in his complaint and it is central to his claim.

Where a complaint refers to a document that is central to the plaintiff's claim and the plaintiff fails to attach the document to his complaint, a defendant may submit an undisputedly authentic copy to the court to be considered in a motion to dismiss. *See Prager v. LaFaver*, 180 F. 3d. 1185, 1189 (10th Cir. 1999) (*citing GFT Corp v. Associated Wholesale Grocers, Inc.*, 130 F. 3d 1381, 1384 (10th Cir. 1997)). Plaintiff does not object to consideration of the handbook, and in fact attaches other portions of the handbook to his response. Because Plaintiff does not dispute the authenticity of the handbook the Court will consider it in analyzing the motion to dismiss but will not convert the motion to dismiss to a motion for summary judgment.

This Court applies New Mexico substantive law to this supplemental claim. *See BankOklahoma Mortgage Corp. v. Capital Title Co.,* 194 F. 3d 1089, 1103 (10th Cir. 1999). Under New Mexico law, an employer creates an implied contract of employment where its words and actions create a reasonable expectation of termination only for cause. *See Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P. 2d 776, 779 (1993). "An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Id.*, 115

4

N.M. at 672, 857 P. 2d at 783.  Where a written personnel policy expressly reserves the right to terminate employment without notice for any reason, then the personnel policy, standing alone, does not give rise to an implied employment contract.  *See Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 714, 917 P. 2d 1382, 1385 (1996).

Defendant asserts that there was no implied employment contract because the employee handbook stated that:

> Employment with AOL is voluntarily entered into, and the employee if free to resign at any time, with or without cause.  Similarly AOL may terminate the employment relationship at will at any time, with or without notice or cause, so long as there is no violation of applicable federal or state law.

(Def. Ex. A at 1.)

In response, Plaintiff asserts that the employment handbook created a contract in spite of the disclaimer and that a disclaimer does not automatically negate an implied contract.  Plaintiff is correct on the second point.  Under New Mexico law, an implied employment contract may still arise, in spite of a disclaimer, where the employer's conduct reasonably leads employees to believe that they will not be terminated without just cause and a fair procedure.  *See Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P. 2d 468, 471 (Ct. App.) *cert. denied* 119 N.M. 389, 890 P. 2d 1321 (1995); *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 6, 791 P.2d 452, 457 (1990).  Whether an at-will employer-employee relationship has been modified constitutes a factual issue. *See Stieber v. Journal Publ'g Co.*, 120 N.M. 270, 272, 901 P.2d 201, 203 (Ct. App.1995).  In order to support a finding that the employer has made a promise that modifies an employee's employment contract, the Court must examine the totality of the circumstances surrounding the employment relationship.  *See Newberry v. Allied Stores*, 108 N.M. 424, 773 P.2d 1231,1234 (1989).  Accepting all the

well-pleaded factual allegations of the complaint as true and viewing them in the light most favorable to Plaintiff, s*ee Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F. 3d at 1236, Count II should not be dismissed for failure to state a claim. At this early stage of the litigation, dismissal of the breach of employment contract claim would be premature. While Defendant is free to move for summary judgment on this claim, dismissal for failure to state a claim would be inappropriate. Therefore, the Motion to Dismiss should be denied as to Count II.

### b.  Whether Plaintiff's Claim for Intentional Infliction of Emotional Distress as Contained in Count III Should Be Dismissed for Failure to State a Claim.

Defendant argues that the Complaint fails to allege facts sufficient to support a claim for intentional infliction of emotional distress. Under New Mexico law, the Court must initially determine as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort theory of intentional infliction of emotional distress. *See Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App.1984). Generally, in order to qualify under this standard, the recitation of the underlying facts to an average member of the community must arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Padwa*, 127 N.M. at 419, 981 P.2d 1237 (*citing* Restatement (Second) of Torts § 46 cmt. d. (1965)). The conduct must be so extreme in degree as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community. *See Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct. App. 1981). The mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings, is insufficient to establish liability under this theory. *See Padwa*, 127 N.M. at 419, 981 P. 2d at 1237.

The court in Padwa further explained that:

6

> By characterizing conduct as atrocious and utterly intolerable and beyond all possible bounds of decency, the Restatement sets the threshold at the very highest level for conduct to be considered actionable under the tort of outrage. It recognizes that, as part of the price of personal liberty, a free and democratic society must tolerate certain offensive conduct as well as some obnoxious or morally deviant behavior. Accordingly, the mere fact than an actor knows that his conduct is insulting, or will deeply hurt another's feelings is insufficient to establish liability . . . Accordingly, caution, therefore, is the watchword when examining whether the tort of intentional infliction of emotional distress encompasses the facts of a case..

*Padwa,* 127 N.M. at 420, 981 P. 2d at 1238.

For the purposes of this analysis, all factual allegations of the Complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F. 3d at 1236. In his Complaint, Plaintiff alleges that Robertson, Devlin, Wallace, and Palmer targeted him with racist remarks and that, after he complained and filed EEOC charges, Youngman constantly monitored him, harassed him and changed his work assignments. Additionally, Plaintiff alleges that his stock options and bonuses were cut and, due to the mistreatment, he was constructively discharged on December 3, 1998.

Accepting these allegations as true, the conduct of Defendant's employees, although highly offensive, may not rise to the level necessary to permit recovery under the heightened threshold of the tort of intentional infliction of emotional distress. *Compare Padwa,* 127 N.M. at 420, 981 P. 2d at 1238 (initiating sexual relations with friend's current wife, former wife and former fiancée insufficient) *with Nieto v. Kapoor*, 61 F. Supp. 2d 1177, 1182 (D. N.M. 1999) (strikingly insensitive conduct with respect to Plaintiffs' ethnicity and an overabundance of testimony supporting claim that Defendant treated women employees poorly and was regularly abusive sufficient to create jury question). However, resolution of such issues usually occurs at the summary judgment stage or later.

*See Tuton v. City of Las Cruces*, CIV 98-1497 JC/JHG (May 22, 2000).  Accordingly, dismissal of Plaintiff's claim for intentional infliction would be premature and inappropriate.  Although Defendant may move for summary judgment on this claim, it should not be dismissed for failure to state a claim.  Defendant's Motion to Dismiss should be denied as to Count III.

**WHEREFORE,**

    **IT IS ORDERED** that Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint (Doc. 11), filed June 26, 2000, is hereby **DENIED**.

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**